IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:10CR384 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK RUSSO, | ) | UNITED STATES' MEMORANDUM |
| | ) | REGARDING RULE 35 HEARING |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Antoinette T. Bacon and Megan R. Miller, Assistant United States Attorneys, and hereby respectfully submits this memorandum setting forth the United States' position regarding the hearing under Federal Rule of Criminal Procedure 35 for Defendant Frank Russo, in accordance with this Court's Order dated December 6, 2018. (Doc. # 48). For the reasons set forth below and those to be articulated at the hearing, the United States respectfully recommends that this Court reduce Defendant's sentence by three offense levels, *i.e.* from offense level 39 to offense level 36 (a six-year reduction), under U.S.S.G. § 5K1.1 for providing substantial assistance to authorities in the investigation and prosecution of the Cuyahoga County public corruption cases. With a total offense level 36 and a Criminal History Category I, Defendant's Guidelines imprisonment range is 188 to 235 months. The United States respectfully submits that a sentence within this range is appropriate in this case.

I.	BACKGROUND

The United States first approached Frank Russo about cooperating and pleading guilty in the Cuyahoga County public corruption probe on July 29, 2009, a year after the execution of search warrants at the Cuyahoga County Administration Building.  Russo declined the offer in August 2009.  Subsequently, in March 2010, the United States and Russo again engaged in plea negotiations but could not come to terms.  In July 2010, the Grand Jury indicted Russo's son, Vince Russo.  The following month, while the Grand Jury was preparing to indict Russo alongside James Dimora, Michael Gabor, and other defendants, counsel for Russo approached the United States about a plea for Russo.  Although Russo's last-minute decision to plead guilty delayed the Grand Jury's indictment of the main Dimora case, the parties negotiated an information and plea agreement for Russo.

On September 9, 2010, the United States charged Russo in a 21-count Information. (Doc. # 1).  Russo pleaded guilty to the Information pursuant to a written plea agreement with the United States on September 16, 2010.  (Doc. # 7).  Following a three-level reduction for acceptance of responsibility, Russo's total offense level was 39.  (*Id.*).  At a total offense level 39 and an anticipated Criminal History Category I, the Plea Agreement contemplated a Guidelines imprisonment range of 262 to 327 months.  The Plea Agreement did not require Russo to cooperate and contained concessions for some of his family members, including a plea deal for Vince Russo, and contained a binding agreement to the low end of the Guidelines range.

In November 2010, while awaiting sentencing, counsel for Russo approached the United States about a proffer for Russo.  The United States arranged the proffer but did not commit to any particular sentencing recommendation or Guidelines range and did not agree to postpone sentencing.  On December 15, 2010, the Honorable Kathleen M. O'Malley sentenced Russo to

262 months.  (Doc. # 19).  At sentencing, the United States indicated that Defendant was in the early stages of cooperating in the investigation and that a motion under Rule 35 might be made.  The district court entered judgment on December 29, 2010 (Doc. # 21), and the judgment was amended on January 4, 2011 (Doc. # 22).

On December 14, 2011, the United States timely filed a motion under Rule 35, in which it requested that the Court "consider reducing the sentence of Defendant for providing substantial assistance to the United States in investigating and prosecuting persons who are targets and subjects of the Cuyahoga County corruption investigation."  (Doc. # 28).  The United States requested that this Court hold a hearing on the motion after Russo had substantially completed his cooperation but made no representation about the sentence it would recommend at the hearing.  (*Id.*).

On October 15, 2012, the United States filed another motion requesting that this Court hold a Rule 35 hearing to "apprise the Court of the Defendant's cooperation and make a specific sentencing recommendation."  (Doc. # 36).  On October 16, 2012, Russo filed a motion requesting a status conference before this Court scheduled a Rule 35 hearing.  (Doc. # 37).  The Court held a status conference on October 25, 2012, at which it stayed the Rule 35 hearing until after the prosecution of Anthony Calabrese in *United States v. Anthony O. Calabrese III*, Case No. 1:11CR437.  Russo surrendered to FCI Loretto on November 16, 2012.  (Doc. # 39).

On July 13, 2018, Russo filed a motion asking the Court to hold a hearing on the Rule 35 motion.  (Doc. # 46).  The Court granted Russo's motion and scheduled a hearing for February 21, 2019.  (Doc. # 48).  Pursuant to this Court's Order, the United States now submits this memorandum to support its recommended sentencing reduction for Defendant's substantial assistance.

## II. APPLICABLE LAW

Federal Rule of Criminal Procedure 35 governs the United States' motion for a reduction of sentence. Rule 35(b)(1) provides: "Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). The Sixth Circuit has held in an *en banc* decision that "Rule 35(b) does not require or authorize consideration of § 3553(a) factors." *United States v. Grant*, 636 F.3d 803, 816 (6th Cir. 2011) (en banc); *see also United States v. Bullard*, 390 F.3d 413, 416 (6th Cir. 2004) (holding that departure for substantial assistance from mandatory minimum sentence under 18 U.S.C. § 3553(e) "must be based *solely* upon the 'substantial assistance' rendered by the defendant.") (quoting *United States v. Snelling*, 961 F.2d 93, 97 (6th Cir. 1991)) (quotation marks omitted). As such, a Rule 35(b) hearing is limited to a determination of the value of substantial assistance. *Grant*, 636 F.3d at 816. This limitation, however, "does not eliminate the traditionally broad discretion that district courts exercise in valuing the assistance." *Id.*

## III. SUBSTANTIAL ASSISTANCE

Section 5K1.1 of the United States Sentencing Guidelines contains the Commission's policy statement regarding a sentencing reduction for substantial assistance to authorities. Section 5K1.1 generally recognizes a district court's discretion to depart from the guidelines when the defendant has provided substantial assistance in the investigation or prosecution of another person. It then provides the following non-exclusive factors from which the court may determine the appropriate reduction:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

>(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
>(3) the nature and extent of the defendant's assistance;
>
>(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; [and]
>
>(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a). While district courts have "traditionally broad discretion" in evaluating assistance, the "value of the substantial assistance is the governing principle in this exercise of discretion." *Grant*, 636 F.3d at 816. In determining the appropriate reduction, "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance." U.S.S.G. § 5K1.1(a), App. n. 3.

      A.      <u>The Value of Russo's Cooperation</u>

Based on an evaluation of the above considerations, the United States recommends a three-level reduction for Russo's cooperation. The government readily admits that Russo provided valuable assistance in the investigation and prosecution of the Cuyahoga County public corruption cases. Russo met with the FBI on multiple different dates. The information that Russo provided led to convictions, and Russo testified in three trials: *United States v. McCafferty*, 1:10CR387; *United States v. Terry*, 1:10CR390; and *United States v. Dimora, et al.*, 1:10CR387. He was prepared to testify in *United States v. Mohammad et al.*, 1:10CR389, but those defendants pleaded guilty on the eve of trial.

Russo provided information that contributed to the Daniel Weaver prosecution (guilty plea), Hamdi Qasem prosecution (guilty plea) and the James Trovato Count of the Gabor indictment (jury acquittal). Russo provided information about a bribery scheme involving Joseph O'Malley, which resulted in the United States' decision not to recommend a 5K

5

substantial assistance reduction for O'Malley.  He also provided information about other bribes that Russo received from Ronald Romanini, which caused the United States to renegotiate the Romanini plea agreement to obtain an increased sentence.  Russo provided additional detail that led to the Charles Randazzo plea agreement.

Russo's cooperation also led to others cooperating.  Russo pinpointed the County employees who had knowledge of certain events, thereby streamlining the investigation.  The fact of Russo's cooperation helped motivate some witnesses to cooperate.

B. Limitations on the Value of Russo's Cooperation

The usefulness of Russo's cooperation, however, was limited by its untimeliness.  By the time Russo agreed to cooperate, 18 months had passed since the United States first approached him about cooperating and pleading guilty.  Russo was the 36th defendant charged in this matter, and when he decided to cooperate, 46 people were already charged.  Had Russo decided to cooperate sooner, many of those defendants could have been prosecuted earlier.  Likewise, because Russo waited so long to cooperate, the United States had already obtained much of the information about which Russo ultimately testified through other cooperators.

For example, the largest bribery scheme in which Russo was involved related to a series of commercial real estate appraisal contracts between Valuation Advisory Services Enterprises ("VAS") and the Cuyahoga County Auditor's Office, which scheme was ultimately valued at $21,480,000.  As previously indicated, law enforcement first approached Russo about cooperating and pleading guilty to his involvement in this scheme and others in July 2009.  Russo declined the offer in August 2009.  By contrast, three of Russo's co-conspirators in the VAS scheme—Santina Klimkowski, Bruce Zaccagnini, and Timothy Armstrong— did agree to

6

cooperate around that time—Klimkowski in April 2009, Zaccagnini in June 2009, and Armstrong in July 2009.

Before Klimkowski, Zaccagnini and Armstrong proffered, the United States had only general knowledge of the VAS scheme.  For example, when Klimkowski first agreed to cooperate, the United States was generally aware that Russo accepted bribes in exchange for outsourcing the County's commercial real estate appraisal contract to VAS and that Klimkowski served as the "bagman" to funnel bribes to Russo.  The government did not know the details surrounding the VAS scheme, however, including the source of the bribes—Bruce Zaccagnini.  Klimkowski provided those details.  Klimkowski's cooperation led to an interview with Zaccagnini, during which he admitted his involvement in the scheme, and for which he ultimately pled guilty.

Klimkowski also revealed the following bribery schemes in which Russo was involved: (1) a bribery scheme that Russo brokered for Klimkowski relating to a painting contract with the Maple Heights School District; (2) a bribery scheme between Russo and Anthony Calabrese related to the sale of a property in Euclid, Ohio, for which Klimkowski received a payment from Calabrese; (3) a television that Frank Russo and Vince Russo gave to Klimkowski and another Maple Heights school official in return for assisting clients of VinCor with school board contracts; (4) a bribe that Klimkowski received from an asphalt company in relation to a Maple Heights School District contract; (5) a bribe that Klimkowski received from Doan Pyramid (Michael Forlani's company) in relation to a Maple Heights School District contract; (6) a scheme involving diverting new school board computers; and (7) job buying at the Auditor's Office.

Bruce Zaccagnini and Timothy Armstrong also provided similarly valuable insight regarding the VAS scheme as a result of their timely cooperation. Zaccagnini provided previously unknown information about the law firm Armstrong, Mitchell, Damiani and Zaccagnini's involvement in the VAS scheme. Zaccagnini described how he or Damiani distributed draw checks that included proceeds of the County's payments for the appraisal contracts and how each law partner contributed to the kickbacks provided to Klimkowski for Russo. Similarly, Armstrong's early cooperation substantially assisted the government's investigation into the VAS scheme in that he was the only witness who could testify about how the conspiracy began. Armstrong also corroborated Zaccagnini's testimony about (1) the law partners' involvement in the scheme; (2) the fact that the law firm, not VAS, was the true beneficiary of the scheme; (3) the profits from the scheme; and (4) that the kickbacks were intended for Russo.

On September 18, 2009—a full year before Russo was charged, let alone agreed to cooperate—Klimkowski, Zaccagnini and Armstrong were charged via Information for their roles in the VAS scheme, among others, in *United States v. Santina Klimkowski, et al.*, Case No. 1:09CR408. They plead guilty as follows: Klimkowski on September 29, 2009; Zaccagnini on October 1, 2009; and Armstrong on October 2, 2009. Based on the defendants' timely cooperation—which positioned them to provide previously unknown information to the government—each cooperator received a four-level reduction for substantial assistance. Had Russo agreed to cooperate when Klimkowski, Zaccagnini and Armstrong did, he almost certainly could have provided previously unknown information to the government regarding his and others' involvement in the VAS scheme. By choosing to wait, however, the value of Russo's information to the government was largely limited to corroborating historical information.

Moreover, Russo's delay curtailed many investigative opportunities that would have maximized his cooperation. By the time of his cooperation, Russo had no ability to make consensual recordings or work in a proactive capacity. This inability to participate proactively made his cooperation less valuable than other cooperators such as Kevin Kelley, Kevin Payne and Daniel Gallagher, all of whom conducted consensual recordings during the early stages of the investigation. Similarly, by avoiding proactive engagements, Russo did not face any risk of injury to him or his family as a result of his cooperation with law enforcement.

Further comparison to other cooperators in the Cuyahoga County public corruption cases also suggests that a three-level reduction is appropriate. While the United States has recommended four-level reductions—and one six-level reduction—for other cooperators in the corruption cases, it has consistently emphasized the *timeliness* of the cooperation in so doing.

For example, Kevin Kelley was the only cooperator who received a six-level reduction. Mr. Kelley agreed to cooperate on July 28, 2008—the very day that law enforcement confronted him and the day that the investigation went overt with the execution of multiple search warrants. As the first cooperator in the entire County corruption case, Kelley provided information about numerous schemes that were previously unknown to law enforcement. His early involvement allowed him to cooperate proactively, specifically conducting consensually recorded conversations.

Similarly, the United States moved for a four-level departure under U.S.S.G. § 5K1.1 for Defendant John J. Carroll. *See United States v. John Carroll*, 1:09CR342 (R. 97: Sent. Tr., PageID 1471-74). The government's "[f]irst and foremost" reason was the defendant's timely cooperation. (*Id.*, PageID 1471). Specifically, "[a]lmost immediately after the search warrants were executed at his house, [counsel for Mr. Carroll] notified [the government] of Mr. Carroll's

9

intent to cooperate in the investigation, brought him in, and participated in several different proffer sessions in which he detailed not only his criminal conduct, but the criminal conduct of others, both known to the Government and unknown to the Government." (*Id.*, PageID 1471-72). By timely cooperating and pleading guilty, Mr. Carroll "saved the Government substantial resources in investigating and discovery and trial preparation. . . . Trial preparation on one case alone was estimated to take agents, approximately three agents working full-time, four months, multiplied by the number of schemes, the defendant saved considerable resources which the Government was then able to address toward other targets and other aspects of the investigation." (*Id.*, PageID 1472). The United States also noted that Mr. Carroll "agreed to make [and did make] a consensual recording with another prospective co-defendant." (*Id.*). Based on the government's information, this Court granted the four-level sentencing reduction. (*Id.*, PageID 1473-74).

The United States also moved for a four-level departure for Defendant Nilesh Patel. *See United States v. Patel*, 1:09CR342, (R. 32: Sent. Tr., PageID 275-76). To support its motion, the United States pointed to "further details" beyond Mr. Patel's testimony in the trial of Thomas Greco. (*Id.*, PageID 275). As the United States explained at sentencing, Mr. Patel timely contacted law enforcement with respect to his own involvement in criminal activity. (*Id.*). At the time, law enforcement was aware of a loss of approximately only $80,000 in the Metro Health scheme, and Mr. Patel's disclosure revealed losses ranging upward of $628,000. (*Id.*). The United States recognized that Mr. Patel provided "substantially new information about the scope and breadth of the criminal activity under investigation." (*Id.*). In so doing, "[h]e saved the Government many months of investigation by providing relevant documents to the investigative agents, providing summary charts of the relevant documents, and explaining to the

agents how the relevant documents related to the scheme." (*Id.*, PageID 275-76).  Based on the United States' motion, this Court afforded Mr. Patel the requested four-level downward reduction.  (*Id.*).

The United States likewise requested a four-level departure for Defendant Dinesh Bafna. *See United States v. Bafna*, 1:09CR505, (R. 32: Sent. Tr., PageID 1326-31).  At sentencing, the United States remarked that Mr. Bafna "impressed the government that almost immediately when approached, [defendant] began cooperating, and cooperating completely and fully." (*Id.*, PageID 1327-28).  By timely cooperating, Mr. Bafna "allowed the agents to focus their resources on other criminal conduct and allowed them to investigate other uncharged schemes."  Again, the United States' motion for a four-level downward departure was granted.

The United States anticipates that Russo will recommend a six-level downward departure for substantial assistance based primarily on the sheer volume of his assistance, *i.e.*, the number of trials at which he testified and the amount of time he spent working with law enforcement.  Putting aside the fact that it was Russo's extensive involvement in the County corruption scandal that provided him with such breadth of knowledge in the first place, the Guidelines make clear that it is the government's assessment of the *value* of his assistance that is entitled to "substantial deference."  *See* U.S.S.G. § 5K1.1(a) App. n. 3.  And while the United States readily admits that Russo provided valuable assistance in the prosecutions of multiple defendants in the County corruption cases, that assistance was limited by Russo's eleventh-hour decision to cooperate.  The United States thus recommends a three-level sentence reduction for substantial assistance under U.S.S.G. § 5K1.1.

11

IV.     CONCLUSION

For the foregoing reasons, and those to be articulated at the Rule 35 hearing, the United States respectfully recommends a three-level downward reduction under U.S.S.G. § 5K1.1 for Defendant Frank Russo's substantial assistance to authorities.

                Respectfully submitted,

                MATTHEW SCHNEIDER
                United States Attorney
                Eastern District of Michigan

By:   /s/ Megan R. Miller
                Megan R. Miller (OH: 0085522)
                Assistant United States Attorney
                United States Court House
                801 West Superior Avenue, Suite 400
                Cleveland, OH 44113
                (216) 622-3855
                (216) 522-2403 (facsimile)
                Megan.R.Miller@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of December 2018, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Megan R. Miller
Megan R. Miller
Assistant U.S. Attorney